**HARMONY HOMES, INC., Plaintiff,**

v.

**UNITED STATES of America, on behalf of its agency, SMALL BUSINESS ADMINISTRATION, Defendant.**

**No. 95–498–CIV–T–17(B).**

United States District Court,
M.D. Florida,
Tampa Division.

Aug. 5, 1996.

---

908

Harry Miller Hobbs, Law Office of Harry M. Hobbs, Tampa, FL, for plaintiff.

Richard Braverman, Small Business Administration, Coral Gables, FL, Michael A. Cauley, U.S. Attorney's Office, Middle District of Florida, Tampa, FL, Lisa Stotsbery Still, Special Assistant U.S. Attorney, Jacksonville, FL, for defendant.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

KOVACHEVICH, Chief Judge.

This action is before the Court on a motion for summary judgment filed by the Defendant, United States of America, on behalf of its agency, Small Business Administration, filed May 14, 1996, (Docket No. 31), Plaintiff's response thereto, filed May 30, 1996 (Docket No. 37), motion for summary judgment filed by the Plaintiff, Harmony Homes, Inc., ("Harmony Homes") May 15, 1996 (Docket No. 32), and Defendant's response thereto, filed May 15, 1996 (Docket No. 36).

## STATEMENT OF FACTS

The undisputed facts in the instant case are as follows:

1. According to the Plaintiff's Second Amended Complaint to Foreclose Mortgage, George A. Lacey and M. Darlene Lacey ("Laceys") executed a promissory note and mortgage on May 14, 1974 in favor of Ellis National Bank of Tampa ("Ellis National Bank").

2. On September 30, 1976, the Laceys executed a second promissory note and mortgage in favor of Ellis National Bank.

3. On August 9, 1978, Ollie Adkinson agreed to assume and pay the Laceys' two promissory notes and two mortgages in favor of Ellis National Bank.

4. Additionally, on August 9, 1978, a modification agreement was entered by Ollie Adkinson and Ellis National Bank. The modification agreement provided that the entire balance of interest and principal would be due and payable on August 9, 1989.

5. On or about April 1980, Ellis National Bank instituted foreclosure proceedings against the Laceys and Ollie Adkinson.

6. On November 5, 1980, Ollie Adkinson executed an agreement in favor of Plaintiff, Harmony Homes, Inc. ("Harmony Homes"), confirming the outstanding amount of the indebtedness due and owing Ellis National Bank, confirming that he is owner of the property, and agreeing that the amount remaining was now due to Harmony Homes.

7. Also, on November 5, 1980, Ollie Adkinson deeded, by Warranty Deed, the subject real property to O.C. King, the President of Plaintiff, Harmony Homes.

8. On November 5, 1980, a stipulation was entered into by counsel for Ellis National Bank and Harmony Homes. The stipulation represented that the note and mortgage, which were the subject of the above mentioned foreclosure proceeding, had been assigned to Harmony Homes and the Plaintiff in that action would be substituted from Ellis National Bank to Harmony Homes.

9. On November 20, 1980, Ellis National Bank assigned its interests in the two mortgages to the Plaintiff, Harmony Homes.

10. Plaintiff, Harmony Homes, in its second amended complaint, states that no pay-

ments have been made on the above mentioned notes and mortgages since November 5, 1980.

11. On November 23, 1982, two assignments (hereinafter referred to as "the assignments") were recorded in the Hillsborough County public records. These recordings reported to assign the interest in these two mortgages of Harmony Homes, through its President, O.C. King, to Sun Bank of Tampa ("Sun Bank").

12. On August 23, 1994, Sun Bank reassigned its interests in the two mortgages back to the Plaintiff, Harmony Homes, by virtue of two assignment of mortgage documents (hereinafter referred to as "the reassignments"), prepared by counsel for Plaintiff.

13. On April 26, 1979, Aqua Marine Products, Inc., through its President and sole shareholder, Ollie Adkinson, obtained a loan, which was guaranteed by the Small Business Administration, from Southeast Bank of Westshore. Ollie Adkinson, on behalf of Aqua Marine Products, Inc., executed a promissory note in favor of Southeast Bank of Westshore.

14. On May 31, 1979, Southeast Bank of Westshore assigned its interests in the promissory note to the Small Business Administration.

15. Ollie and Beatrice Adkinson executed their guaranty of repayment as security for the Southeast Bank loan. This guaranty was secured by a mortgage on the real property, which is the subject of this action, executed in favor of Southeast Bank on April 26, 1979.

16. On April 26, 1979, Southeast Bank assigned all of its interests in the mortgage to the Small Business Administration.

17. In 1983, O.C. King, President of Harmony Homes, requested that Small Business Administration release its mortgage lien on the subject property. An agreement was reached whereby Small Business Administration would release it mortgage lien upon payment by Mr. King to Small Business Administration in the original principal amount. Mr. King entered a promissory note in the amount of the original principal amount on October 15, 1983.

18. On May 3, 1990, the United States, on behalf of the Small Business Administration, filed a federal foreclosure complaint against O.C. King, President of Harmony Homes.

19. O.C. King filed bankruptcy in 1992. On January 15, 1993, an Order Granting Relief from Automatic Stay was entered in favor of the United States in the bankruptcy proceeding. The foreclosure lawsuit instituted by the United States resumed.

20. On November 3, 1993, Summary Judgment/Final Decree of Foreclosure was entered in favor of the United States.

21. A United States Marshal's Deed was subsequently executed in favor of the Small Business Administration upon its entry of the successful bid in the subsequent foreclosure sale.

## STANDARD OF REVIEW

 This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact, when all the evidence is viewed in the light most favorable to the non-moving party. *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party in favor of the non-moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994 (5th Cir.1979) (quoting *Gross v. Southern Railroad Co.*, 414 F.2d 292 (5th Cir.1969)). Factual disputes preclude summary judgment.

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court of the United States held:

In our view the plain language of Rule 56(c) mandated the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an ele-

ment essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* 477 U.S. at 317, 106 S.Ct. at 2549, 91 L.Ed.2d at 273.

■ The Court also said, "Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. A dispute is genuine, and summary judgment is inappropriate, if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The complaint in this case was filed in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida. The cause was removed to this Court, based on federal question jurisdiction, under 28 U.S.C. § 1331. The complaint states a cause of action for mortgage foreclosure.

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I. *Statute of Limitations*

■ In Florida, the Statute of Limitations on mortgage foreclosures with an ascertainable date of maturity is five (5) years. § 95.111 and § 95.281, Fla.Stat. (1982 & Supp.1996). Florida Statute § 95.281 addresses limitations on instruments encumbering real property and provides in pertinent part:

(1) The lien of a mortgage or other instrument encumbering real property, herein called mortgage ... shall terminate after the expiration of the following periods of time:

(a) If the final maturity of an obligation secured by a mortgage is ascertainable from the record of it, 5 years after the date of maturity.

 * * * * * *

(2) If an extension agreement executed by the mortgagee or his successors in interest and the mortgagor or his successors in interest is recorded, the time shall be extended as follows:

(a) If the final maturity of the obligation, as extended, secured by the mortgage is ascertainable from the record of the extension agreement, 5 years after the date of maturity of the obligation as extended.

§ 95.281, Fla.Stat. (1982 & Supp.1996).

The modification agreement, which was entered into by Ollie Adkinson and Ellis National Bank of Tampa, specifically stated that "the entire balance of interest and principal shall be due and payable on the 9th day of August 1989." Application of Florida Statute § 95.281(2)(a) to the modification agreement clearly determines that the monthly payments were to end August 9, 1989, and the statute of limitations would bar a cause of action for foreclosure after August 9, 1994, five (5) years from the date of maturity.

■ The statute of limitations on a mortgage foreclosure action begins to run when the last payment is due, except when the mortgage contains an acceleration clause. *Travis Co. v. Mayes,* 160 Fla. 375, 36 So.2d 264, 265–66 (Fla.1948) (statute of limitations begins to run immediately upon default when mortgage contains an automatic acceleration clause); *Monte v. Tipton,* 612 So.2d 714 (Fla.2d D.C.A.1993) (holding that statute of limitations began to run when optional acceleration clause was invoked); *Locke v. State Farm Fire and Casualty Co.,* 509 So.2d 1375 (Fla. 1st D.C.A.1987) (stating that statute of limitations of mortgage foreclosure began to run at time of acceleration rather than at time of stated maturity date); *Conner v. Coggins,* 349 So.2d 780 (Fla. 1st D.C.A.1977) (finding that the statute of limitations on a mortgage foreclosure does not begin to run on until the last payment is due unless the mortgage contains an acceleration clause).

Defendant asserts that the modification agreement contains an acceleration clause in that the agreement expressly states that:

Borrower agrees that time is of the essence and in the event that any of the above payments are not made within 15 days from the due date, Lender shall declare the entire indebtedness in default

and Lender shall consider all matured indebtedness or liability secured hereby as immediately due and payable without demand and without notice, and Lender shall have the right forthwith to institute proceedings to enforce the collections of all monies secured hereby and/or to foreclose the lien hereof.

■ The Second District Court of Appeal of Florida has followed the reasoning of the Supreme Court of South Dakota which gives "the words of the instrument their full plain meaning and no more" in determining when an acceleration clause is automatic and self-executing. *Baader v. Walker,* 153 So.2d 51, 54 (Fla. 2d D.C.A.1963). "When the contract does not in terms make the maturing of the entire indebtedness optional with the payee, but does expressly provide that upon a default the entire sum should at once become due and collectible, such words should be given effect according to their plain import and the intent of the parties as expressed thereby." *Id.* (citing *Green v. Frick,* 25 S.D. 342, 126 N.W. 579, 581 (S.D.1910)). The *Baader* Court found "that the note did not provide that the holder might have the option to declare the note due in case of default, but the provision is absolute and when there is a default the entire note becomes due, without the necessity of a declaration on the part of anyone." *Id. See Cook v. Merrifield,* 335 So.2d 297 (Fla. 1st D.C.A.1976).

■ The Supreme Court of Florida had stated that "the law is well settled that the statute of limitations begins to run against a mortgage at the time the right to foreclose accrues." *Travis Co. v. Mayes,* 36 So.2d at 265. "The rule is also settled that when a mortgage in terms declares the entire indebtedness due upon default of certain of its provisions or within a reasonable time thereafter, the Statute of Limitations begins to run immediately the default takes place or the time intervenes." *Id.*

Plaintiff, in the second amended complaint, asserts that no payments were made since November 5, 1980. The next payment, which would have been due by December 9, 1980, was not paid and constituted a default in payment. Accordingly, fifteen (15) days from the due date, being December 24, 1980,

the five (5) year statute of limitations began to run. Therefore, Defendant asserts that the right to accelerate was automatically asserted once the fifteen (15) day grace period lapsed and the statute of limitations barred any causes of actions filed after December 24, 1985.

Although this Court finds that this is a valid application of the statute of limitations, the facts must be viewed in the light most favorable to the non-moving party. Accordingly, this Court will apply the statute of limitations as commencing on August 9, 1989, which is the date Plaintiff asserted in its response to Defendant's motion for summary judgment as the date of the statute of limitation's commencement.

■ Defendant, as an alternative theory to summary judgment, asserts that, even if the acceleration clause is ignored, the statute of limitations still bars this action. In its second amended complaint, Plaintiff asserts that the "entire balance was due together with interest on August 9, 1989." Plaintiff argues that August 9, 1989 is when the statute of limitations began running and pursuant to the five year statute of limitations, suit had to have been filed no later than August 9, 1994. Although Plaintiff filed suit in state court on or about June 24, 1994, this Court finds that the Plaintiff did not have standing to foreclose on this mortgage at that time due to the fact that Plaintiff did not hold a valid interest in the mortgages at the time the suit was filed. As discussed below, Plaintiff did not have standing until August 24, 1994, at which time the statute of limitations had expired.

■ On November 26, 1982, Plaintiff, Harmony Homes, through its President, O.C. King, recorded two assignments of its interest in the mortgage, which is the subject of this action, to Sun Bank. The assignments clearly state that the mortgages and the notes, which were at one time assigned to Harmony Homes from Ellis National Bank, were the subject of the assignment. The recorded assignments are signed by the President of Harmony Homes, O.C. King, and affixed with the corporate seal. The assignments were also signed by two wit-

nesses who affirm the fact that the assignments were signed, sealed, and delivered in their presence.

The recorded assignments expressly state "that Harmony Homes, Inc. . . . in consideration of the sum of Ten ($10.00) dollars . . . in hand paid by Sun Bank . . . does grant, bargain, sell, assign . . . a certain indentured mortgage . . . [t]ogether with the note or obligation described in said mortgage." These documents were recorded in the Hillsborough County public records.

Additionally, it was not until August 23, 1994, that counsel for the Plaintiff prepared two reassignments of mortgage wherein Sun Bank assigned these interests back to Plaintiff, Harmony Homes.

The Plaintiff asserts that the assignments to Sun Bank were not valid since the notes were not indorsed or delivered. Therefore, Plaintiff claims to have maintained possession as well as an interest in mortgage at the time the suit was filed in state court. As evidence of Plaintiff's possession at the time the suit was filed, Plaintiff, Harmony Homes, has filed an affidavit stating that it has been the owner and holder of the notes since 1980. The Court notes that this affidavit is signed by O.C. King, the same person who signed the assignments of mortgage to Sun Bank.

The Supreme Court of Florida has held that it is possible for an assignment of the mortgage to constitute an assignment of the notes, even if the assignee does not have possession of the notes. *Beaty v. Inlet Beach, Inc.*, 9 So.2d 735, 741 (Fla.1942).

■■■ "Unquestionably under Florida law 'delivery' is necessary to validate a note." *First National Bank in Fort Lauderdale v. Hunt*, 244 So.2d 481 (Fla. 4th D.C.A.1971) (citing *Curry v. Wright*, 101 Fla. 1489, 134 So. 508 (Fla.1931)). Section 1–201(14) of the Uniform Commercial Code, which Florida has adopted, defines delivery with respect to negotiable instruments as meaning the "voluntary transfer of possession."

■■■ Florida courts recognize constructive delivery as a sufficient form of delivery. *Bloempoort v. Regency Bank of Florida*, 567 So.2d 923 (Fla. 2d D.C.A.1990). Constructive delivery occurs when " 'the maker in some

way evinced an intention to make it an enforceable obligation against himself, according to its terms, by surrendering control over it and intentionally placing it under the power of the payee or some third person for his use.' " *City National Bank of Miami v. Wernick*, 368 So.2d 934, 937 (Fla. 3d D.C.A. 1979) (citing 11 Am.Jur.2d, Bills and Notes, § 276 p. 302 (1963)). *See also Kent v. Kent*, 6 Cal.App.2d 488, 44 P.2d 445 (1935) (stating that a note may be transferred by assignment without transfer of possession of the note).

■■■ "A constructive delivery is sufficient if made with the intention of transferring the title, and the final test is whether the indorser did such acts in reference to the instrument as evidenced an unmistakable intention to pass title to the instrument and thereby relinquish all power and control over it. Delivery of a written assignment of an instrument has been held effective as a constructive delivery without delivery of the negotiable instrument itself. . . ." 11 Am. Jur.2d, Bills and Notes, § 368, p. 392 (1963).

In the instant case, the Plaintiff clearly intended to surrender control of the mortgages and notes at the time of the assignments. This can be seen from the language of the assignments, the President's of Harmony Homes signature on the assignments, the recordation of the assignments in public records, and the fact that Plaintiff's counsel subsequently prepared documents that reassigned the interest back to Plaintiff. This Court finds that the recorded assignment, signed by an officer who had the authority to make such an assignment, shows a valid transfer of the note and mortgage to the assignee, Sun Bank. *See Lay v. Austin*, 7 So. 143 (Fla.1890). Sun Bank appears to have been placed in control of the mortgages and notes since the reassignments were signed by a representative of Sun Bank, specifically, the commercial loan operations officer.

This Court is also persuaded by the fact that some courts have held "that delivery of the assigned bill or note is not essential to complete an assignment, particularly when there is an assignment separate from the

instrument and such assignment is delivered." 11 Am.Jur.2d, Bills and Notes, § 367 p. 390 (1963). *See O'Gasapian v. Danielson,* 284 Mass. 27, 187 N.E. 107 (1933) (holding that assignment of note and mortgage, in statutory form and under seal, was effective to transfer assignor's interest in the note, even without indorsement or delivery); *Buckman v. Hill Military Academy,* 182 Or. 621, 189 P.2d 575 (1948).

In this Court's opinion, there was an effective assignment given the language of the assignment, the recordation of that assignment, and the reassignment prepared by counsel for the Plaintiff, which assigned Sun Bank's interest back to the Plaintiff after the statute of limitations had already lapsed. *See Highland Crate Cooperative v. Guaranty Life Insurance Co. of Florida,* 154 Fla. 332, 17 So.2d 515, 516 (1944).

 In light of the evidence presented, this Court finds that there exists no genuine issue as to the fact that a valid assignment actually occurred between Harmony Homes and Sun Bank on November 26, 1982. "Issues of fact are only genuine if a reasonable jury, considering the evidence presented could find for the non-moving party." *Ali v. City of Clearwater,* 915 F.Supp. 1231, 1235 (M.D.Fla.1996) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986)). Due to the evidence which unambiguously establishes the fact that Plaintiff did not have an interest in the mortgage at the time the suit was filed, this Court finds that no reasonable jury could find otherwise. Accordingly, no genuine question of material fact exists.

 "The weight of authority in the United States is that the assignee of a mortgage and note assigned as collateral security is the real party in interest, that he holds the legal title to the mortgage and note, and that he, not the assignor, is the proper party to file suit to foreclose the mortgage. We agree that such is the weight of authority and, further, that the said rule prevails in Florida." *Laing v. Gainey Builders, Inc.,* 184 So.2d 897 (Fla. 1st D.C.A.1966).

 Therefore, Plaintiff, Harmony Homes, lost standing to file a suit for foreclosure when its interests were assigned to Sun Bank on November 23, 1982. The Plaintiff did not regain its interest or have standing to bring this cause of action until August 24, 1994. On or about June 24, 1994, the time this cause of action was filed, Plaintiff clearly did not have standing to bring this claim. The statute of limitations barred any suit filed after August 9, 1994. When Plaintiff regained its interest, on August 24, 1994, the claim had already been barred by the statute of limitations. In Florida, statute of limitations is a question of law. *Pentecostal Holiness Church, Inc. v. Mauney,* 270 So.2d 762, 769 (Fla. 4th D.C.A.1972). "Questions of law may be determined on a motion for summary judgment." *Id.*

THEREFORE, this Court finds that this cause of action is barred by the applicable statute of limitations and the Defendant's Motion for Summary Judgment is GRANTED.

## II. *Laches*

 Florida Statute § 95.11(6) provides that laches automatically bar any action that would be barred by the statute of limitations. § 95.11(6), Fla.Stat. (1982 & Supp.1996). THEREFORE, this Court finds that this cause of action is additionally barred by laches and pursuant to Florida Statute § 95.11(6), Defendant's Motion for Summary Judgment is GRANTED, thus mooting Plaintiff's cross motion. Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Docket No. 31) be **GRANTED;** Plaintiff's Motion for Summary Judgment (Docket No. 32) be **DENIED;** and the Clerk of Court **shall** enter judgment for defendant pursuant to this order.

**DONE and ORDERED** in Chambers, in Tampa, Florida, this 5th day of August, 1996.