# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

———————————————

U.S. BANK HOME MORTGAGE, A
DIVISION OF U.S. BANK NATIONAL
ASSOCIATION,

Appellant,

v.

ROBERT BOIVIN a/k/a ROBERT J. BOIVIN;
THERESA L. BOIVIN; WILLIAM O. VANDERBURG;
TIFFANY L. VANDERBURG; MR. LOWE LLC;
and CITY OF LARGO,

Appellees.

No. 2D2023-2239

———————————————

February 14, 2025

Appeal from the Circuit Court for Pinellas County; Amy Williams, Judge.

David Rosenberg of Robertson, Anschutz, Schneid, Crane & Partners, PLLC, Boca Raton, for Appellant.

Thomas O. Michaels of Thomas O. Michaels, P.A., Dunedin, for Appellees Robert Boivin a/k/a Robert J. Boivin and Theresa L. Boivin.

Samuel J. Heller of Older Lundy Koch & Martino, St. Petersburg, for Appellees William O. Vanderburg and Tiffany L. Vanderburg.

No appearance for remaining Appellees.

MORRIS, Judge.

U.S. Bank Home Mortgage, a division of U.S. Bank National Association (hereinafter the mortgagee), appeals from a final judgment entered in the mortgagee's foreclosure action in favor of appellees, William O. Vanderburg and Tiffany L. Vanderburg.[1] Because we conclude that the trial court erred in entering the final judgment, we reverse.

## BACKGROUND

Robert J. Boivin, Theresa L. Boivin, and Maurice Boivin were the original owners of the property in question. The mortgagee provided a loan for the property to Maurice Boivin in his sole capacity, and the Boivins, collectively, executed a mortgage to secure the loan.[2] The mortgage had a maturity date of July 1, 2036,[3] and it was recorded in the official records of Pinellas County. The mortgage states, in relevant part, that upon default by the borrower, the mortgagee has the option to accelerate payment of the full loan balance and to foreclose on the property. The mortgage also provides that the mortgagee's decision to forgo acceleration and foreclosure at the time of the borrower's default does not waive the mortgagee's right to later accelerate and to foreclose.

---

[1] Our record contains a suggestion of death indicating that Mrs. Vanderburg passed away prior to trial. However, the final judgment was still entered in her and Mr. Vanderburg's favor.

[2] We note that Robert J. Boivin and Theresa L. Boivin have no personal liability under the note and that the final judgment was entered only in favor of the Vanderburgs. The Boivins were not referenced in the final judgment.

[3] Two loan modifications extended the maturity date to October 2041. However, they were not recorded at the time the Vanderburgs purchased the property and thus are not relevant to the issue in this case. We will refer to the July 2036 maturity date throughout this opinion.

In January 2009 and again in August 2011, the mortgagee filed foreclosure actions against the Boivins. The first action was dismissed pursuant to a settlement, and the second action was dismissed for lack of prosecution.

The City of Largo instituted its own foreclosure proceeding against the Boivins based on a code enforcement lien that had been filed against the property.[4] Initially, the mortgagee was named as a defendant in the City's action, but during the pendency of that action, the mortgagee was dropped as a defendant for unknown reasons. In January 2020 the Vanderburgs purchased the property at a judicial foreclosure sale resulting from the City's foreclosure action. The Vanderburgs took title to the property on February 3, 2020, and the mortgagee filed a third foreclosure action against the Boivins on February 12, 2020.

In October 2021 the mortgagee filed an amended complaint naming the Vanderburgs as defendants and property owners.[5] The complaint alleged that the loan had been in default since August 2010. In their answer and affirmative defenses, the Vanderburgs asserted an affirmative defense of laches, alleging that the mortgagee "slept on [its] right to foreclose" and that the foreclosure of the property would prejudice them. The Vanderburgs alleged that they had expended money on the property.

---

[4] In its brief, the mortgagee asserts that the City was a junior lienholder, and the Vanderburgs do not dispute that assertion.

[5] Due to the minimal amount of time between the Vanderburgs taking title to the property and the mortgagee's filing of the foreclosure action, the mortgagee's title report did not disclose the Vanderburgs' purchase of the property. Thus the Vanderburgs were not named as defendants in the initial complaint.

At the nonjury trial, Mr. Vanderburg was the main witness for the defense.  Mr. Vanderburg acknowledged that he did not contest the validity of the mortgage between the mortgagee and the Boivins.  But in presenting his affirmative defense of laches, he argued that the mortgagee waited from 2013, when the second foreclosure action was dismissed, until 2020 to bring the third foreclosure action and that the mortgagee only filed the third foreclosure action after the Vanderburgs had purchased the property and expended a large amount of money on it by paying for repairs, insurance, and taxes.

Mr. Vanderburg was familiar with checking for liens on properties due to his position as a building inspector, and before purchasing the subject property, he performed a title search on it.  Mr. Vanderburg admitted that the title search reflected the existence of the mortgage.  However, Mr. Vanderburg asserted that he did not realize that there had been prior foreclosure actions on the property and that if he had known such information, he would not have purchased the property.  He testified that the "[t]itle company did not have that information," but he admitted that he did not check the court docket to see if there had been any prior foreclosure actions.

In rebuttal, the mortgagee's witness testified about the reasons why the mortgagee did not accelerate the note and foreclose prior to 2020.  She testified that before 2015, the mortgagee was communicating with the Boivins about possible "home retention options."  Maurice Boivin passed away during that time so the mortgagee was working with his heirs.  There were several holds put on the file for various reasons, and the witness testified that the mortgagee was required to wait to foreclose until any holds were removed.  The witness testified that at the time of the filing of the third foreclosure action, the mortgagee was not aware

4

that the Vanderburgs purchased the property; the mortgagee also never asked the Vanderburgs to repair the property, nor did the mortgagee know that the Vanderburgs were doing so.

During closing arguments, the mortgagee argued that the doctrine of caveat emptor—"let the buyer beware"—applied and that the affirmative defense of laches should not apply. The mortgagee asserted that the Vanderburgs did not conduct their due diligence to investigate whether there was a lien on the property and that since the mortgage had a maturity date of July 2036, the mortgagee could enforce the note at any time until that date.

Ultimately, the trial court concluded that laches did apply. The trial court noted that the Vanderburgs had expended money on improving the property. The trial court found that the mortgagee had delayed in foreclosing on the property; this was based on the facts that the loan had been in default since 2010 and that the prior foreclosure action had been dismissed in 2013. A final judgment was entered in favor of the Vanderburgs. The mortgagee filed a motion for rehearing which was denied. This appeal follows.

ANALYSIS

A trial court's determination that the doctrine of laches applies is reviewed for abuse of discretion as long as there is competent, substantial evidence to support each element of the doctrine. *See Holley v. Erwin-Jenkins*, 369 So. 3d 1218, 1223 (Fla. 2d DCA 2023).

"The passage or lapse of time alone is insufficient to support the finding of laches." *Wagner v. Moseley*, 104 So. 2d 86, 92 (Fla. 2d DCA 1958). "Laches is based upon an unreasonable delay in asserting a known right which causes undue prejudice to the party against whom the claim is asserted." *Gratkowski v. ASI Preferred Ins. Corp.*, 351 So. 3d

5

1216, 1221 (Fla. 2d DCA 2022). "[L]aches is an affirmative defense, and the burden of proof is on the party asserting it; it must, moreover, be proved by very clear and positive evidence." *Id.* (quoting *Smith v. Branch*, 391 So. 2d 797, 798 (Fla. 2d DCA 1980)).

> For laches to be applicable, Mr. Vanderburg was required to prove:
>
> (1) conduct by the defendant that gives rise to the complaint; (2) that the plaintiff had knowledge of the defendant's conduct and did not assert the opportunity to institute suit; (3) lack of knowledge by the defendant that the plaintiff will assert the right upon which suit is based; and (4) extraordinary injury or prejudice.

*Holley*, 369 So. 3d at 1223 (quoting *Ticktin v. Kearin*, 807 So. 2d 659, 664 (Fla. 3d DCA 2001)). All of the elements must be proven in order for the doctrine to be applicable. *See Fla. Bar v. Lipman*, 497 So. 2d 1165, 1167 (Fla. 1986) (relying on *Fla. Bar v. McCain*, 361 So. 2d 700, 705-06 (Fla. 1978)).[6]

---

[6] Mr. Vanderburg argues that the mortgagee failed to preserve its arguments regarding whether Mr. Vanderburg presented sufficient evidence of each element of the laches defense. Mr. Vanderburg contends that the mortgagee confined its argument to whether the rule of caveat emptor applies. However, our review of the transcript reflects that the mortgagee tied its argument about caveat emptor to the issue of whether laches had been sufficiently proven. Specifically, the mortgagee presented arguments about the reason for the delay in filing the third foreclosure action (second element) and whether the Vanderburgs exercised due diligence to determine if there had been a prior foreclosure action and if the mortgagee intended to foreclose in the future (third and fourth elements). Though the mortgagee may not have used the term "sufficiency of the evidence" or specifically referred to the elements of the laches defense, we construe its arguments as addressing those issues. We further note that in its motion for rehearing, the mortgagee specifically addressed the elements of unreasonable delay and prejudice. But in any event, in a foreclosure action, "a sufficiency of the evidence claim may be raised for the first time on appeal." *Colson v. State Farm Bank, F.S.B.*, 183 So. 3d 1038, 1040 (Fla. 2d DCA 2015); *see also Lacombe v. Deutsche Bank Nat'l Tr. Co.*, 149 So. 3d 152, 153 (Fla. 1st

Here, Mr. Vanderburg failed to meet his burden of proving all of the elements.  Mr. Boivin had already defaulted on the mortgage in August 2010, which constitutes conduct by the defendant giving rise to the complaint (i.e., the first element).[7]  The Vanderburgs, as subsequent purchasers, were indispensable parties to any ensuing foreclosure action.  *See English v. Bankers Tr. Co. of Cal., N.A.*, 895 So. 2d 1120, 1121 (Fla. 4th DCA 2005) (explaining that an owner of the fee simple title is an indispensable party to a foreclosure action (citing *Cmty. Fed. Sav. & Loan Ass'n v. Wright*, 452  So. 2d 638, 640 (Fla. 4th DCA 1984))).

---

DCA 2014) (explaining that Florida Rule of Civil Procedure 1.530(e) "applies to appeals challenging the sufficiency of the evidence in mortgage foreclosure actions after bench trial" and that in such a case, "the general rule requiring specific contemporaneous objection to preserve the asserted error for appeal does not apply").  Thus we find no merit to Mr. Vanderburg's preservation argument.

[7] We note that the mortgagee asserts that the conduct giving rise to the complaint occurred in February 2020 at the time of filing its third foreclosure action because that is when it accelerated the loan.  Mr. Vanderburg, on the other hand, asserts that the conduct giving rise to the complaint occurred on August 1, 2010, when Mr. Boivin first defaulted on the loan.  We agree with Mr. Vanderburg.  The mortgagee relies on case law for the proposition that its right to foreclose accrued at the time of filing its third foreclosure action because that is when the last element of the cause of action occurred (i.e., when it accelerated the loan).  We do not disagree with that general principle, but the issue is whether Mr. Vanderburg presented sufficient proof of all of the elements of a laches defense.  The accrual of the cause of action here is more properly addressed within the context of whether the mortgagee unreasonably delayed in instituting its suit, the second element of a laches defense.  Indeed, when the trial court mentioned the date of default, it was addressing the length of time between that date, the dismissal of the second foreclosure action, and the filing of the third foreclosure action before ultimately concluding that the mortgagee unreasonably delayed in filing the third foreclosure action.  But as will be explained, the proof of the first element of a laches defense does not change the disposition of this case.

7

The second element addresses any delay by a plaintiff. The length of time between when a right accrues and when that right is asserted must be measured in order to determine if a party delayed in initiating a suit. *See Bethea v. Langford*, 45 So. 2d 496, 498 (Fla. 1949). Here, the trial court focused on the length of time between the Boivins' default, the 2013 dismissal of the second foreclosure action, and the filing of the third foreclosure action in 2020. But the accrual of the mortgagee's cause of action was neither based on the date of default nor the dismissal of the second foreclosure action.

A cause of action for foreclosure accrues on the maturity date of the loan unless the lender elects to accelerate at an earlier date. *See Bollettieri Resort Villas Condo. Ass'n v. Bank of N.Y. Mellon*, 228 So. 3d 72, 74-75 (Fla. 2017) (Lawson, J., concurring); *see also Nationstar Mortg., LLC v. McDaniel*, 288 So. 3d 1235, 1236 (Fla. 5th DCA 2020) (reciting the four elements of a cause of action for foreclosure, including the acceleration of the loan); § 95.031(1), Fla. Stat. (2023) ("A cause of action accrues when the last element constituting the cause of action occurs."). And where a borrower remains in a constant state of default, a lender is entitled to file a subsequent foreclosure action with each subsequent default provided that the applicable statute of limitations has not run. *See Grdic v. HSBC Bank USA, N.A. as Tr. for Registered Holders of Ace Secs. Corp.*, 267 So. 3d 473, 476 (Fla. 2d DCA 2019) (citing *Bartram v. U.S. Bank, Nat'l Ass'n*, 211 So. 3d 1009, 1021 (Fla. 2016)).

Here, the mortgage expressly contains an acceleration clause that provided the mortgagee with the *option* of accelerating the note and foreclosing upon Mr. Boivin's default rather than a requirement to do so. The mortgage also specifically addresses the mortgagee's right to forgo acceleration and foreclosure at the time of the borrower's default without

8

waiving the mortgagee's right to later accelerate and to foreclose. The mortgagee had the right to foreclose on the mortgage until July 1, 2036. The mortgagee accelerated the amount due under the note and filed the third foreclosure action on February 12, 2020. Thus, the date of accrual of the mortgagee's cause of action was the date it filed the third foreclosure action: February 12, 2020. It cannot be said that the mortgagee unreasonably delayed in initiating its suit when it had more than sixteen years remaining before the loan's maturity date. The fact that the mortgagee waited several years after the dismissal of the second foreclosure action to file its third foreclosure action matters not because the terms of the mortgage contained a nonwaiver provision and because the loan had not yet matured. Thus the trial court erred in determining that the mortgagee unreasonably delayed in initiating the third foreclosure action, and it abused its discretion in entering final judgment in favor of the Vanderburgs.

Because proof of all of the elements of laches must be proven in order for the doctrine to apply, the trial court's error in determining that the mortgagee unreasonably delayed initiating the third foreclosure action is enough to mandate reversal. However, Mr. Vanderburg failed to prove a lack of knowledge and prejudice as well (i.e, the third and fourth elements).

Mr. Vanderburg acknowledged that he was aware of the existing mortgage when he and his wife purchased the property. However, he testified that he was not aware of the prior foreclosure actions and that if he had been, he would not have gone through with the purchase. But not only did Mr. Vanderburg admit having actual knowledge of the existing mortgage, he also had, at the very least, constructive notice of its contents. *See Regions Bank v. Deluca*, 97 So. 3d 879, 883-85 (Fla. 2d

9

DCA 2012) (explaining that "[c]onstructive notice is a legal inference, and it is imputed to . . . subsequent purchasers" due to the relevant documents being filed in the official records and further explaining that the recording of a mortgage provides constructive notice of both the existence of the instrument and its contents (quoting *Dunn v. Stack*, 418 So. 2d 345, 349 (Fla. 1st DCA 1982))). Knowledge of the contents of a mortgage is imputed to a purchaser because "an examination of these documents prior to a transfer of the real property is entirely expected." *M/I Schottenstein Homes, Inc. v. Azam*, 813 So. 2d 91, 95 (Fla. 2002). And here, the recorded mortgage clearly reflects the acceleration clause and nonwaiver provision. Thus knowledge of these provisions is imputed to Mr. Vanderburg. Having imputed knowledge that the mortgagee had the option to accelerate the loan and foreclose through July 2036, Mr. Vanderburg cannot establish that he lacked knowledge that the mortgagee had the option to foreclose at some point after he and his wife purchased the property. Indeed, Mr. Vanderburg never established that he had been given reason to believe that the mortgage would never be foreclosed. *Cf. Smith*, 391 So. 2d at 798 (concluding in relevant part that the appellee could not claim a lack of knowledge as an element of laches where he was well aware of the existence of the mortgage in question and where he "did not establish that he had ever been given reason to believe that the mortgage would not ever be foreclosed").

Furthermore, because Mr. Vanderburg admitted that he was unaware of the prior foreclosure actions, he cannot establish that he and his wife were prejudiced by any delay by the mortgagee in filing the third foreclosure action. Mr. Vanderburg was aware of the existing mortgage which gave the mortgagee the right to foreclose up until the date of maturity of the loan. If Mr. Vanderburg was unaware of the prior

10

foreclosure actions, then he had no reason to believe the mortgagee was failing to exercise its legal rights. *See Avelo Mortg., LLC v. Vero Ventures, LLC*, 254 So. 3d 439, 443 (Fla. 4th DCA 2018) (explaining that to demonstrate prejudice for purposes of applying laches, the party raising the defense must establish that he or she has suffered a loss or injury by relying "on another person's voluntary failure to exercise a legal right" and further explaining that a party's delay in asserting a legal right—standing alone—does not establish laches (first quoting *Pyne v. Black*, 650 So. 2d 1073, 1076 (Fla. 5th DCA 1995); and then relying on *Ticktin*, 807 So. 2d at 663)). Notably, the delay between the dismissal of the second foreclosure action and the filing of the third foreclosure action benefitted the Vanderburgs by allowing them to remain in the property for a longer period of time; this cannot constitute "legal prejudice." *Id.* (citing *Florance v. Johnson*, 366 So. 2d 527, 528 (Fla. 3d DCA 1979)).

While it is true that the Vanderburgs had made substantial repairs to the property and had paid taxes and insurance on it, this is not the type of case that qualifies as an exception to the rule such as where there *is* an unreasonable delay by a mortgagee coupled with unique circumstances. *Cf. id.* (noting *Travis Co. v. Mayes*, 36 So. 2d 264 (1948), which involved a mortgagee's attempt to file a foreclosure action seventeen years after the maturity date of the mortgage and where the mortgagor had paid all taxes and improvement liens and had made substantial repairs and improvements to the property). As we have already explained, there was no unreasonable delay in this case. This court is not unsympathetic to the fact that the Vanderburgs put a significant financial investment into the property and that Mr. Vanderburg stands to lose this investment due to the foreclosure. But the Vanderburgs did these things at their own risk where Mr.

11

Vanderburg had actual knowledge of the existing mortgage and imputed knowledge of its contents and where he had been given no reason to believe that the mortgagee would never foreclose.

"[A] purchaser at a judicial sale 'takes title subject to defects, liens, incumbrances, and all matters of which he . . . has notice, *or of which he . . . could obtain knowledge in the exercise of ordinary prudence and caution.*' " *Quest Sys., LLC v. Far*, 356 So. 3d 300, 302 (Fla. 2d DCA 2023) (quoting *U.S. Bank Nat'l Ass'n v. Rios*, 166 So. 3d 202, 210 (Fla. 2d DCA 2015)). Unfortunately, prior to their purchase, the Vanderburgs failed to use due diligence and to investigate further once Mr. Vanderburg learned that the property was subject to an existing mortgage. They chose to purchase the property despite Mr. Vanderburg's knowledge of the existing mortgage and to take the chance that the mortgage would never be foreclosed. But this risk was borne only by them and cannot serve as a basis to bar the mortgagee from seeking to accelerate the loan and to foreclose prior to the maturity date of the loan, an option that was clearly stated in the mortgage.

The trial court abused its discretion by entering final judgment in favor of the Vanderburgs. We therefore reverse.

Reversed and remanded.

KELLY and LUCAS, JJ., Concur.

_____

Opinion subject to revision prior to official publication.